**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2493-17T1

IN THE MATTER OF THE
APPLICATION OF ALLENWOOD
TERRACE APARTMENTS, LP FOR
NINE PERCENT LOW-INCOME
HOUSING TAX CREDITS FROM
THE 2017 SENIOR CYCLE.

Submitted February 25, 2019 – Decided March 20, 2019

Before Judges Messano and Rose.

On appeal from the New Jersey Housing and Mortgage Finance Agency, LIHTC Application No. 2017-B.

Day Pitney, LLP, attorneys for appellant Allenwood Terrace Apartments, LP (Sarah Sakson Langstedt and Craig M. Gianetti, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Housing and Mortgage Finance Agency (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeet M. Gulati, Deputy Attorney General, on the brief).

PER CURIAM

Allenwood Terrace Apartments, LP (Allenwood) appeals from a December 19, 2017 final agency decision of the New Jersey Housing and Mortgage Finance Agency's (HMFA) Tax Credit Committee (TCC), denying its application for Federal low-income housing tax credits (LIHTC) for its senior affordable housing project in Wall Township. Allenwood argues the TCC's decision was arbitrary, capricious, and unreasonable primarily because Allenwood's "clerical" errors were "easily corrected" and disqualification was "grossly disproportionate to the minimal harm."

We reject Allenwood's contentions and affirm substantially for the reasons set forth in the TCC's comprehensive and well-reasoned written decision, which "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). We add the following comments to give context to the TCC's decision.

Our review of agency determinations is limited. In re Stallworth, 208 N.J. 182, 194 (2011). Indeed, "[i]n administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "Consistency with that principle demands that an

appellate court . . . should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. Further, we defer to "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility. . . ." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (alteration in original) (citation omitted).

New Jersey's Fair Housing Act, N.J.S.A. 52:27D-301 to -329.9, charges the HMFA with the responsibility of establishing "affordable housing programs to assist municipalities in meeting the obligation . . . to provide low and moderate income housing." N.J.S.A. 52:27D-321. As part of that responsibility, the HMFA administers the Federal government's low-income housing credit program, 26 U.S.C. § 42, which "provides an incentive for the construction and rehabilitation of low[-]income rental housing by lowering its overall cost through the use of tax credits to developers and owners of qualified rental projects." In re Adoption of 2003 Low Income Hous. Tax Credit Qualified Allocation Plan, 369 N.J. Super. 2, 11 (App. Div. 2004).

The Federal regulations require the HMFA to adopt a "qualified allocation plan" (QAP). 26 U.S.C. § 42(m)(1)(A). Accordingly, each year the HMFA establishes a QAP that includes funding cycles and the amount of credits available in each cycle. See N.J.A.C. 5:80-33.1 to -33.38. The application process commences with a self-implemented scoring system, requiring each applicant to complete a self-score sheet with the application. N.J.A.C. 5:80-33.14. Based on those self-determined rankings, the HMFA then examines the applications of the projects "that rank sufficiently high to receive credits." N.J.A.C. 5:80-33.14.

Generally, an LIHTC applicant bears the burden of ensuring its application is "clear, unambiguous, and complete in all respects at the time of submission." N.J.A.C. 5:80-33.11(b). Further, the regulations explicitly mandate the applicant's responsibilities when seeking an LIHTC award:

> The applicant assumes the full burden of disclosing with certainty in its application how it shall obtain and maintain site control. The application shall set forth with specificity by what means each parcel of the project's real property is to be acquired if such acquisition has not yet been perfected; applications shall not indicate alternate means of acquisition for any particular parcel. For all forms of site control, a copy of the current owner's recorded deed (or equivalent) shall be submitted as supporting documentation.
>
> [N.J.A.C. 5:80-33.12(c)(2)(ii) (emphasis added).]

A-2493-17T1

Defects in an application may be cured within forty-eight hours of submission. N.J.A.C. 5:80-33.11(c)(1). However, "[a]pplicants that utilize the cure period in N.J.A.C. 5:80-33.11(c)(1) . . . shall have one point per each defect cured deducted from the application's score." N.J.A.C. 5:80-33.15(a)(22) (emphasis added).

On April 27, 2017, Allenwood submitted its application to the HMFA, seeking a $1.4 million tax credit for the 2017 Senior Cycle. See N.J.A.C. 5:80-33.5. Fourteen competitors applied for tax credits; Allenwood's proposal was one of seven to self-score the maximum of ninety points.

However, Allenwood omitted from its application the property's recorded deed. The HMFA permitted Allenwood to cure the deficiency within forty-eight hours, but advised that a failure to do so "may result in a reduced point score and/or disqualification of the application." The following day, Allenwood submitted the deed via email to the HFMA.

During its August 24, 2017 meeting, the TCC deemed Allenwood's proposal "ineligible, due to financial infeasibility[,]" and further noted the project was deducted one point for failing to include the deed with its application. As a result, Allenwood scored eighty-nine points, whereas the four

projects that received LIHTC awards each scored the maximum ninety points. Accordingly, the TCC denied Allenwood's application.

Thereafter, Allenwood requested reconsideration of the TCC's decision. See N.J.A.C. 5:80-33.22(c). In particular, Allenwood argued it demonstrated "site control" for its project because it had previously submitted an American Land Title Association (ALTA) survey with its loan application and, as such, the HMFA had an "equivalent" of Allenwood's deed "on file." Allenwood claimed "a [one-]point deduction for a hyper[-]technical provision where the HMFA had 'the equivalent' information was not warranted." Secondly, while Allenwood acknowledged its "53.8% of the total tax credit developer fee was listed as deferred[,]" it argued that deficiency was a "minor discrepancy in the application."

During its December 14, 2017 meeting, the TCC evaluated Allenwood's request for reconsideration, and affirmed its prior determination. In a twelve-page written decision, the TCC surveyed the applicable law and explained its findings. Regarding Allenwood's late-furnished deed, the TCC found:

> There can be no doubt that N.J.A.C. 5:80-33.12(c)(2)(ii) requires that a copy of the recorded deed, or its equivalent, be included in a project's [LIHTC] application. The recorded deed was not provided by [Allenwood] until after notification of the deficiency by [a]gency staff, thereby invoking the

6

mandatory one-point deduction pursuant to N.J.A.C. 5:80-33.11(e).

. . . .

We reject [Allenwood's] attempt to shoehorn its inclusion of an ALTA survey in a different (non-tax-credit) application submitted to a separate division of the [a]gency into satisfaction of its obligation to provide a copy of the recorded deed (or equivalent) in the tax credit application itself. . . . [I]t is not staff's responsibility to search for information, especially where, as here, the QAP directs that a specific document be included in the tax credit application . . . .

[(Emphasis omitted).]

As to its determination of financial infeasibility, the TCC acknowledged Allenwood's concession that it proposed to defer 53.8% of the developer fee, which is greater than the 50% cap set forth in N.J.A.C. 5:80-33.12(c)(6)(v).  In light of that concession, the TCC determined it was "not at liberty to 'interpret away the plain meaning' of the rule by looking – as [Allenwood] would have [it] do – to other indicia to determine whether or not the [p]roject is financially infeasible; it is so because the plain language of the rule says it is."  This appeal followed.

On appeal, Allenwood renews the arguments it raised before the TCC.  In essence, Allenwood concedes its application was defective, but nonetheless

contends the penalties imposed by the HMFA constituted an inflexible adherence to its regulations. We disagree.

To the contrary, the HMFA acted precisely in accordance with its regulations. See In re CAFRA Permit No. 87-0959-5 Issued to Gateway Assocs., 152 N.J. 287, 308 (1997) ("[A]n administrative agency should follow its own rules and regulations."). Those regulations ensure fairness among applicants in a high-volume application process. See N.J.A.C. 5:80-33.14(a); see also In re Tax Credit Application of Pennrose Props., Inc., 346 N.J. Super. 479, 485 (App. Div. 2002) (recognizing "[t]he program is popular and desirable for developers of low[-]income housing and there is competition for the limited number of awards available").

Nor do we find any merit to Allenwood's newly-minted argument that it submitted the "equivalent" of a recorded deed by attaching a copy of its purchase contract to the application. It is axiomatic that a purchase agreement for real property governs the parties' agreed-to conditions prior to the transfer of title, whereas a duly recorded deed evidences ownership of property after title has been transferred. See N.J.S.A. 46:26A-1 to -12. Because a purchase agreement does not evidence title to real property, it cannot be construed as the equivalent

of a deed and, as such, does not satisfy the requirements of N.J.A.C. 5:80-33.12(c)(2)(ii).

Because Allenwood failed to ensure its application was "clear, unambiguous and complete in all respects at the time of submission[,]" N.J.A.C. 5:80-33.11(b), the TCC reasonably denied LIHTC for Allenwood's Wall Township project. We therefore find the TCC's decision was not arbitrary, capricious, or unreasonable on the record presented.

To the extent not otherwise addressed, petitioner's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2493-17T1